UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ROBERT FRED GOGUEN                )
                                  )
        Plaintiff,                )
                                  )
    v.                            )    1:11-cv-00027-DBH
                                  )
GLENN ROSS, *et al.*,             )
                                  )
        Defendants                )

# RECOMMENDED DECISION
## and
## ORDER FOR SERVICE

Robert Goguen, currently an inmate at the Cumberland County Jail, has filed a 42 U.S.C. § 1983 action complaining of his treatment at the Penobscot County Jail in October and November of 2010. His complaint contains names of multiple defendants and sets forth three grounds: a denial of due process relating to a disciplinary proceeding, an Eighth Amendment cruel and unusual punishment claim, and a claim of unconstitutional retaliation. He prefaces these claims with facts relating to being moved from cell to cell by Defendant Parody as a means of harassment rather than necessity and that he received a "major write-up" for having a pencil sharpener, triggering the disciplinary decision related to his classification. Congress has provided that, as an inmate at a correctional facility, Goguen cannot recover monetary damages "for mental or emotional injury suffered while in custody without a prior showing of physical injury," 42 U.S.C. § 1997e(e), but there is some uncertainty regarding whether or not the physical injury requirement applies to due process and First Amendment retaliation claims, at least to the extent the law does provide for an award of nominal damages in the context of § 1983 actions.

I have screened this complaint as required pursuant to 28 U.S.C. § 1915A(a) and (b) and I now recommend that the due process claim be dismissed for failure to state a claim and that certain of the named defendants likewise be dismissed. However, I have also concluded that service is appropriate as to certain of the defendants[1], and I have issued a procedural order authorizing the clerk to take the necessary steps to effectuate service on the following defendants: Mike Parody, Cpl. William Gardner, Jason Raymond, and FNU Samoluk. Service upon other named defendants will be effectuated only if the court rejects this recommended decision, which recommends the dismissal of all claims against Glenn Ross, Lt. Linda Golden, Sgt. Steve Slowik, and Cpl. Collin Cougal.

## *The Factual Allegations*

With respect to the due process claim—paragraphs 13 through 22, and 38—Goguen alleges that he went to his October 19, 2010, disciplinary hearing with the officer who had given him the pencil sharpener and who was going to be his witness. The officer and Goguen met Sgt. Slowik in the hallway on the way to the hearing room, and he assured both of them not to worry about it. However, the presiding officer at the hearing, Defendant Gardner, would not see the witness and found Goguen guilty on his own admission, resulting in a lock-down of seven days. Goguen's appeal was denied.

On October 23, 2010, Cpl. Gardner brought Goguen to an office because he was put in charge of investigating a letter Goguen sent Sheriff Ross. Sgt. Slowik was present. According to Goguen, Gardner stated: "You only need a safe environment and three meals a day, I can do

---

[1] Nothing in this conclusion is intended to suggest that the remaining defendants would in any way be barred from filing a motion to dismiss in the context of an adversarial proceeding. I am simply allowing service to be accomplished because the plaintiff's complaint, liberally construed, may arguably state a claim as to these defendants.

with you what I want, I can and will move you wherever and whenever I want and I don't have to give you a reason, Officer Parody did not kick you."

On October 24, 2010, Samoluk moved Goguen into a cell with blood in the sink, a foul smell, and materials on the floor. Goguen complained to Gardner and was taken to another cell. Later, Samoluk moved him to a third cell, intake cell # 124, where Parody was in charge. Parody announced to a group of officers, including named defendant Jason Raymond, that Goguen was going into a "dry cell." Later that day, Goguen claims he saw Gardner and Parody conspiring in front of his cell before he was moved to a dry cell that was the smallest cell on the block. He was then issued a ticket for disobeying a direct order. It seems that Goguen also wants to include in this claim an allegation that on October 20, 2010, he wrote to Defendant Golden requesting any memos or information regarding any of the preceding occasions and "was told [he] was not entitled to any, 'issue closed.'" (Compl. ¶ 38.)

Goguen next sets forth his cruel and unusual punishment claim. (Compl. ¶¶ 23-33.) He explains that on October 25, 2010, he requested to use the bathroom because his cell was without facilities and that Samoluk refused his request. For the next hour or two he made repeated requests and was told by Officer Raymond that the "shift leader says no." Goguen urinated in his cell and was also driven to defecate in the cell. Raymond came to check on him and saw the urine on the floor, laughed, and denied Goguen the opportunity to clean it up or use a toilet.

Later, Defendant Cougal came to his cell and ordered that Goguen be allowed to shower and to exchange clothes. Officers Samoluk and Raymond entered the cell asking Goguen if "he felt like swinging on him, that now was plaintiff's chance." Goguen went to his knees with his arms behind his back and told the officers that he did not want any problems and that he was not

3

acting aggressively.  A non-defendant officer was standing there at the time and these two defendant officers left the scene.  Shortly after, Goguen received his food in this same cell which had a strong smell of urine and feces.  When defendant Raymond picked up the tray he informed Goguen that if he continued being good Raymond might move him to a cell with a toilet because Raymond was in charge of intake that day.  Moments before the trustee was brought in to clean the cell, Defendant Slowik told Goguen not to worry, that he was being moved to a three-man block, and indicated Goguen should like that.  Goguen then asserts that he was placed in a three-man block just seconds before Sheriff Ross was due to make his daily rounds.  Goguen describes Ross as responsible for everything that goes on in the holding area; "anything that goes on there is to be overseen by him."  Finally, Goguen alleges that that night Defendant Parody entered his block and stated to him:  "I'm the wrong type of victim."  He then tapped a key on his chest.

The third claim pressed by Goguen is that he was subject to retaliation, including assault.  (Compl. ¶¶ 34-38.)  He relates that his previously referenced write-up for disobeying orders was "thrown out."  He wrote another grievance on the actions taken by Parody, Gardner, Raymond, Samoluk, and Slowik.  At some point Goguen requested information on his two removals from U-Block.  On November 21, 2010, Defendant Parody, in front of a fellow inmate slammed the block door into Goguen's knees, reopened the block door, peered in snickering, and said Goguen was "welcome."  Goguen also appears to allege that Parody, in front of a different inmate, told Goguen that he had made this personal because in September Goguen "sized him up."  It also appears that page 3 (Subsection IV) of the form 42 U.S.C. § 1983 complaint relates to this retaliation issue.  In the place provided for claimants to state a claim, Goguen indicates that some months earlier, on July 30, 2010, defendant Parody made offensive comments about him relating to the assertion that Goguen did not have underwear on and stating, "You forgot something

4

under the bridge?" It is Goguen's contention that he was targeted by personnel partly because he was labeled as homeless at the time of his incarceration.

*Screening Recommendation re. Defendants Ross, Golden, Slowik, and Cougal*

First, guided by the supervisory liability discussion in Ashcroft v. Iqbal, 129 S. Ct. 1937, 1947-49 (2009), Goguen has not stated a claim against Sheriff Ross by asserting only that Ross was due to make rounds shortly prior to Goguen's transfer to the three-person block. At this juncture these are allegations of misconduct on the part of the correctional staff, but there are absolutely no allegations that Sheriff Ross, the ultimate supervisor, had any direct personal knowledge of this misconduct. Sheriff Ross received after-the-fact notices of Goguen's various grievances, but based on Goguen's own allegations, Ross did not witness any of the misconduct.

I draw a similar conclusion with respect to the allegations against Collin Cougal and Lt. Linda Golden. The allegations pertaining to Cougal are very limited. They strictly concern the grievance process and the fact that Cougal allowed plaintiff to take a shower and exchange clothing after the defecation/urination incident. Allowing Goguen to shower and change obviously does not give rise to liability under section 1983, leaving only Goguen's alleged connection to a grievance process. Like Cougal, Lt. Golden is faulted for her role in the grievance process because she affirmed the officers' decision, finding no procedural error, and declined to provide Goguen with copies of the various reports. Such allegations are insufficient to support a section 1983 claim against Lt. Golden or Cougal. The mere denial of a grievance, without any direct involvement in the allegedly unconstitutional conduct, does not give rise to personal or supervisory liability under section 1983. Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation

5

under § 1983."); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (holding that the denial of administrative grievances and the failure to remedy the alleged retaliatory behavior does not give rise to liability absent evidence of direct participation, encouragement, authorization, or acquiescence in the alleged violation); Thomas v. Courtroom Deputy for Judge Ronan, Civ. No. 10-0536-PHX-RCB (EV), 2010 WL 2292947, *2, 2010 U.S. Dist. Lexis 64133, *5-6 (D. Ariz. June 8, 2010) ("[W]here a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983.") (collecting additional district court cases to that effect). The claims against Golden and Cougal must be dismissed.

Finally, turning to Sgt. Slowik, the factual allegations against him are piecemeal, arising under all of the various claims of constitutional violations. Taken in their entirety the facts do not state a claim of a constitutional violation. Slowik is mentioned in paragraphs 13, 15, 32, and 34 of the factual allegations and certain conclusory statements about him are made in the prayer for relief. At worst, it appears that Sgt. Slowik was present on certain occasions and made a few comments, none of which suggests any wrongdoing or improper motive. Slowik may have been a supervisor who was aware of Goguen's grievances and who arranged to move Goguen out of the filthy cell into a "three man block" (¶ 32), but these allegations do not amount to constitutional violations. The complaint simply fails to state a claim against Slowik.

## Conclusion

Based upon the foregoing discussion, I recommend that the Court dismiss Goguen's claims against Defendants Ross, Golden, Slowik, and Cougal. I further order that the Clerk

prepare the necessary documents for service on Defendants Gardner, Parody, Raymond, and Samoluk.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

March 23, 2011